1 | **COMP**
SHARON L. NELSON
2 | Nevada Bar No. 6433
REBEKAH L. BAUMGARDNER
3 | Nevada Bar No. 10855
NELSON LAW
4 | 401 N. Buffalo, Suite 100
Las Vegas, Nevada 89145
5 | Telephone:    (702) 247-4529
Facsimile:    (702) 737-4529
6 | Attorneys for Plaintiff
Ira Carter

7

8

9

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| IRA CARTER, an individual, | Case No.: |
| Plaintiff, | **COMPLAINT** |
| vs. | **[DEMAND FOR JURY TRIAL]** |
| LAS VEGAS METROPOLITAN POLICE DEPARTMENT, | |
| Defendant. | |

Plaintiff Ira Carter (hereinafter referred to as "Plaintiff"), by and through his counsel,

Sharon L. Nelson and Rebekah Baumgardner of Nelson Law, hereby alleges and states against

Las Vegas Metropolitan Police Department (hereinafter referred to as "Defendant") as follows:

## GENERAL ALLEGATIONS

1.      At all times relevant herein, Plaintiff was an individual residing in the State of Nevada.

2.      At all times relevant herein, Defendant was a Nevada law enforcement agency.

3.      All events giving rise to this suit occurred in Clark County, Nevada.

4.    All the acts and/or failures to act alleged herein were duly performed by and/or are attributable to Defendant, acting by and through their agents and employees.  Said acts and/or failures to act were within the scope of said agency and/or employment, and the Defendant ratified said acts and/or omissions.

5.    Plaintiff has worked for Defendant for twenty-eight (28) years, eighteen (18) years as a detective, and has an exemplary record.

6.    Plaintiff is African American and suffers from Pseudofolliculitis Barbae (hereinafter referred to as "PFB").

7.    Plaintiff's condition is chronic, incurable and causes cystic nodules and/or scarring particularly on Plaintiff's neck, upper lip, chin and cheeks when Plaintiff shaves.

8.    There is no known effective treatment for the affliction other than abstinence from shaving, and, once afflicted, a person's PFB lasts a lifetime.

9.    PFB most commonly affects African American men.

10.    For approximately fourteen (14) years, Plaintiff received a shaving waiver for his medical condition which Defendant honored.

11.    In November of 2007, Defendant notified Plaintiff that his doctor requested shaving waiver would be revoked within forty-five (45) days.

12.    Defendant thereafter changed its policy relative to shaving and required those individuals with such waivers to seek and obtain approval from Defendant's Director of Health and Safety Section.

13.    On information and belief, only African American males had shaving waivers on file with Defendant as a result of PFB.

14.     Once approved the shaving waiver accommodation would only remain in effect for ninety (90) days and thereafter had to be renewed at the employee's expense.

15.     On February 9, 2009, Defendant was directed by Lt. Robert Sebby (hereinafter referred to as "Sebby") to go to Captain Stavros Anthony's (hereinafter referred to as "Anthony") office to discuss his condition.

16.     While discussing the issue with Sebby and Anthony, Plaintiff expressed that the current policy discriminated against minority employees, more specifically African American men.

17.     Plaintiff was thereafter informed by Sebby and Anthony that Defendant would no longer accept shaving waivers and that any employee suffering from PFB must "actively seek treatment" for the condition.

18.     Plaintiff was directed by Sebby and Anthony to meet with his doctor immediately.

19.     The next day, Plaintiff was examined by his doctor who advised Defendant in writing that Plaintiff's condition was chronic; flared up with shaving and that Plaintiff should not shave for a minimum of six (6) months.

20.     Thereafter Plaintiff was instructed to submit to an examination by Defendant's doctor, Joe Heck (hereinafter referred to as "Heck").

21.     During his examination of Plaintiff, Heck admitted he himself had never suffered from PFB and bragged that of the fourteen (14) officers with a shaving letter from a doctor, the department was now "down to four."

22.     Heck then provided Plaintiff with a pre-prepared letter on Defendant's letterhead instructing Plaintiff on how to shave.  Dr. Heck also informed Plaintiff that he could wear his facial hair "closely trimmed."

23.     Shortly thereafter, Plaintiff was again summoned by Sebby to Anthony's office and informed that he had "misunderstood" Heck's instructions and that indeed he must be clean shaven.

24.     Plaintiff was confronted by his Deputy Chief, Jim Owens (hereinafter referred to as "Owens") about his condition, who demanded to know why Plaintiff was not following Heck's instructions.  Plaintiff was told by Owens to make another appointment with Dr. Heck and that "he better keep it."

25.     Plaintiff reiterated that his doctor had advised against shaving for six (6) months.

26.     Plaintiff also expressed concern to his Deputy Chief that Defendant felt this was a "fabricated" condition and that Dr. Heck made clear that at least ten (10) employees no longer had shaving waivers.

27.     Plaintiff told Owens that he had a documented medical condition and that the treatment of him was unfair.

28.     Owens simply said "you're in remission" and threatened Plaintiff with discipline if he did not comply with Heck's recommendations.

29.     Defendant next demanded that Plaintiff's doctor advising the shaving waiver and Dr. Heck discuss Plaintiff's medical condition.  Plaintiff was presented with a release for records from his doctor and told that if he refused to sign he would face discipline.

30.     The following Monday, Plaintiff presented to work with facial hair.

31.     Defendant commenced an IAB investigation, placed Plaintiff on light duty and told Plaintiff he could no longer have any contact with victims, suspects, or witnesses.

32.     Defendant did indeed file a statement of complaint and on April 2, 2008, Plaintiff was notified by IAB that an investigation had commenced due to his "insubordination."

33.     Plaintiff remained on light duty for some time and was not allowed contact with any suspects, victims or witnesses.

34.     Due to Plaintiff's light duty status, he was unable to work any overtime.

35.     Furthermore, Plaintiff has been prohibited from wearing a uniform for any situation even to honor a fallen officer.

36.     In May of 2009, Plaintiff filed a complaint with the NERC and concurrently with the EEOC alleging discrimination

37.     The conduct to which Plaintiff was subjected was because of his race in violation of 42 U.S.C. §1981 (hereinafter referred to as "§1981").

38.     This Court may exercise supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367 as they are so related that they form part of the same case and controversy.

## FIRST CAUSE OF ACTION
### (Race Discrimination/Disparate Impact in violation of §1981)

39.     Plaintiff repeats and re-alleges paragraphs 1-38 by this reference the same as though fully set forth herein.

40.     Defendant employs a facially neutral business practice requiring that male officers shave.

41.     However, that business practice has a significant adverse impact and/or disproportionate adverse effect on African American male employees, a protected group.

42.     There is no business necessity which justifies the application of Defendant's business practice.

43.     Plaintiff has in fact suffered a disparate impact resulting from Defendant's policy and has been damaged in an amount in excess of $10,000.00.

44.    Additionally, the conduct of Defendant and its employees has been malicious, fraudulent and oppressive and was designed to vex, annoy or harass Plaintiff and thus Plaintiff is entitled to punitive damages under §1981 in an amount in excess of $10,000.00.

45.    As a result of Defendant's conduct as alleged herein, Plaintiff is entitled to his attorneys' fees and costs of suit as provided by §1981.

## SECOND CAUSE OF ACTION
### (Retaliation in violation of §1981)

46.    Plaintiff repeats and re-alleges paragraphs 1-45 by this reference the same as though fully set forth herein.

47.    Plaintiff engaged in protected activity and specifically complained that Defendant's shaving policy discriminated against minorities.

48.    After Plaintiff complained he was subjected to adverse treatment including but not limited to, an opened IAB investigation, placed on light duty, instructed to refrain from contact with suspects, lost overtime and lost the ability to wear his uniform.

49.    The adverse treatment to which Plaintiff was subjected was a result of his protected activity.

50.    As a result of Defendant's conduct, Plaintiff has been damaged in an amount in excess of $10,000.00.

51.    Additionally, the conduct of Defendant and its employees has been malicious, fraudulent and oppressive and was designed to vex, annoy or harass Plaintiff and thus Plaintiff is entitled to punitive damages under §1981 in an amount in excess of $10,000.00.

52.    As a result of Defendant's conduct as alleged herein, Plaintiff is entitled to his attorneys' fees and costs of suit as provided by §1981.

//

### THIRD CAUSE OF ACTION
### (Negligent Infliction of Emotional Distress)

53.    Plaintiff repeats and re-alleges paragraphs 1-52 by this reference the same as though fully set forth herein.

54.    Defendant's behavior towards Plaintiff has been extreme, outrageous and was at a minimum, negligent.

55.    Plaintiff has suffered serious emotional distress including resulting physical symptoms.

56.    As a direct and proximate result of the negligent infliction of emotional distressful acts of Defendant, Plaintiff has experienced serious emotional distress resulting in damages in excess of $10,000.00.

57.    Plaintiff has been forced to hire legal counsel in this matter and thus should recoup his attorney's fees and costs.

### FOURTH CAUSE OF ACTION
### (Negligent Training, and Supervision)

58.    Plaintiff repeats and re-alleges the allegations set forth in paragraphs 1-57 by this reference the same as though fully set forth herein.

59.    Defendant has a duty to properly train and supervise its employees.

60.    Defendant's duty to properly train and supervise extends to all persons, including Carter, in its employ.

61.    Defendant failed to properly hire, train and supervise its agents, servants or employees herein with respect to retaliation, anti discrimination laws, PFB and its effects among other things.

62.     As a direct and proximate result of the breach of said duty, Defendant's agents', servants' or employees' conduct against Carter unlawfully and willfully subjected Carter to discriminatory treatment and retaliation in violation of Federal Law.

63.     As a result of Defendant's conduct, Plaintiff is entitled to damages in an amount in excess of $10,000.00.

### FIFTH CAUSE OF ACTION
**(Injunctive and Declaratory Relief)**

64.     Plaintiff repeats and re-alleges paragraphs 1-63 by this reference the same as though fully set forth herein.

65.     Defendant's continued violations of the State and Federal Constitutions require equitable relief to prevent further harm.

66.     Plaintiff requests that Defendant be enjoined from any further violations of the Constitution or his civil rights.

67.     Furthermore, Plaintiff requests that this Court declare Defendant's conduct violative of the laws identified in this Complaint and declare Defendant's conduct a violation of state and federal law.

//

//

**WHEREFORE**, Plaintiff requests the following relief:

1.      Actual and general damages in excess of $10,000.00;

2.      Punitive and exemplary damages where appropriate in excess of $10,000.00;

3.      Statutory damages as allowed by law in excess of $10,000.00;

4.      Equitable relief;

5.      Declaratory relief;

6.      Attorney's fees, costs and expenses;

7.      For such other relief as the Court deems just and equitable.

Dated this 25 day of February 2010.

**NELSON LAW**

SHARON L. NELSON
Nevada Bar No. 6433
REBEKAH L. BAUMGARDNER
Nevada Bar No. 10855
401 N. Buffalo, Suite 100
Las Vegas, Nevada 89145
Attorneys for Plaintiff
Ira Carter

Plaintiff hereby demands trial by jury.

**NELSON LAW**

SHARON L. NELSON
Nevada Bar No. 6433
REBEKAH L. BAUMGARDNER
Nevada Bar No. 10855
401 N. Buffalo, Suite 100
Las Vegas, Nevada 89145
Attorneys for Plaintiff
Ira Carter